Good morning, Robert. Good morning. For the defendants in this case. I'd like to reserve about four minutes, see how it goes. I'd first like to point out, this is on qualified immunity, and so what I want to point out first is that there is no property interest, and take it from that, and then go into whether a reasonable officer would know to clearly establish that line. So the first point is the charter. Our position is that the city charter establishes the public works director as an at-will employee. Now, the city charter itself has the highlight in Section 5, it says, other city officers and employees. And then the guts of it says the council may appoint a city attorney on either a temporary, special, periodic, or permanent basis, a chief of police, or a city marshal, a fire chief, and such other officers and employees of the city as the council deems necessary or advisable, and may remove any of them at any time within their discretion. I first point out that, you know, Prairie City has about six employees, so we're not like Portland, you know, it's six or seven employees, so a very small organization, city council basically hires everybody. Now, what the magistrate held, the magistrate said in her order, the language of the city charter in this case does not expressly provide that the city council has the authority to appoint a public works director, nor terminate his employment at will. So what the magistrate did, the magistrate went through, took a look and says, well, wait a second, there's no authority in this section to hire, quotation mark, a public works director. Then the magistrate went through all the other provisions of the charter where they described the duties of a chief of police, fire chief, et cetera. Our point is very simple. Section 5 applies to all employees. You know, it says the city, such other officers and employees. We don't have to prove that the public works director is, quotation mark, an officer. He's an employee. And we're assuming in this argument, I guess, that Oregon law is in general terminable at will by either party. Correct. Okay. So that's the underlying basis of what you're arguing. Exactly. And then the underlying basis is that a city charter is the constitution of the city. It trumps any personal roles, personnel roles, because the court said, okay, the city charter doesn't apply to the public works director, thus it doesn't trump personnel roles. Okay. Now, the second point is that so we're saying there's no property interest at all, so we don't need it. So we should have gotten a motion to or somebody said a judgment should have been granted. The second point now I want to go to is, you know, when you analyze the qualified immunity, your first you have a choice. You can go either prong, either direction. But you first establish that there is a constitutional violation. Then you go whether an officer or whether it was clearly established. Okay. So we say there's no constitutional violation. All right. Because he's at will. Now let's go to the second prong. The magistrate then said, okay, you didn't provide due process. Okay. You provided due process with all your notice of hearings and providing hearings, but you didn't provide due process because you did not give an unbiased decision-maker body. And so what had happened is the Board offered the hearing to Mr. Titus. He did not show up. They met in an executive session. And during that executive session, the following took place. We don't have a cape of it, but we have these notes. The following took place. Rogers said, Rogers, Roger McKinley, one of the councilpersons, all the councilmembers, all the council sitting there in executive session. Rogers said that the information he was about to share must not be discussed outside this room. And then he presented information about Bob, Bob Titus, being diagnosed with bipolar disease, having been treated for many years, and that there are serious effects of the use of alcohol for people with this diagnosis. Bill, Bill Harrington, informed Roger that he felt it was inappropriate to present this personal information to the council. Bill asked if Bob had told him this information, and he responded yes. In other words, Bill Harrington asked Roger McKinley, did Bob Titus tell you this information? And he said yes. And then Bill, again, Bill Harrington, asked Bob if Bob had given Roger McKinley permission to give this information to the council, and Roger McKinley responded no. Bill Harrington repeated that it was inappropriate for Roger to share this personal medical information without the consent of the individual. Rogers said he would provide the council with any information that he wanted to. Okay. So what the court said is, okay, this is unauthorized disclosure of medical information. Our position is it is not unauthorized. If you tell me you have bipolar disease, I can tell anybody I want. There's no privilege between me and you. But that's what the court said. This was unauthorized. And it showed that the city council was biased. Okay. And because it showed the city council was biased, there's a question of fact with the jury. Our position is this does not show the city council's bias. It shows that one member disclosed information and the other member of the city council said, no, we're not going to consider that. All right. So they said that the decision was violated the due process clause because it wasn't an impartial tribunal. We say, no, that's not. We said that that's not violating the Constitution. The second prong is, would a reasonable city council member know that he is biased because some other council member says something in executive session and they're corrected? No. If you're sitting there, they can say anything they want. If you're sitting there and some guy says something inappropriate and one of you jumps him, would you then have to disqualify the whole city council because they're biased? We say, no. So on that decision, we say the court was incorrect. May I back up just a little bit? As I read the city's personnel policy, it seems to me that it lists terminable offenses and lists outlines of procedures for the employee's removal. Was this followed? Yes. To the T? Yes. Well, I guess I'm understanding that the argument is it was not followed. No. We prevailed on it being followed. The court said there's no denial of due process and the manner of notice and everything. The court said we have no problem with that that was not followed. Well, the reason that I ask the question is, it seems to me that personnel policies adopted by the city might give someone the idea under Oregon law that there's an agreement to the contrary of the city charter, so that one might argue that the personnel policies adopted a different procedure than did the charter, and that's the thing that I worry about here. I think that's a good argument. I think you can say that the personnel policies are different than the charter. That's why we have the case law that says the charter trumps. We attach to the E. We attach to our records the two decisions out of Oregon for the City of Sisters and the City of Gold Hill, where those personnel rules in the City of Sisters and the City of Gold Hill gave the employee a property interest. But the charter trumped it because the charter said no. And one of the charters said you serve at the pleasure. So that issue has come up in numerous cases where that argument is made. And you say, well, why did a city council pass procedures that are conflicting with the charter? It happens. So my very last point then is, okay, so our position is that a reasonable person would not know they're biased. The final point is on the third cause of action. Bill Harrington, as those personnel rules, if you read those, once you are terminated, you have a right to appeal. And so according to our personnel rules, the appeal board is a peer of the plaintiff. And so they pick the public works director of Canyon City. Another party picked by somebody, and they pick Anna Bass. And then you pick one of the council members to be on that appeal. They pick Bill Harrington. Okay. So the plaintiff makes the argument, and then the appeals court heard the hearing. We have a whole tape of that. And the appeals court affirmed the termination. All right. Plaintiff made the argument Harrington was biased because he had already sat on the city council decision, and therefore, that decision was not impartial. The magistrate said, no, that in itself does not make it impartial, that the public works director from Canyon City was not biased, and bias was — and Bass was unbiased. But McKinley was biased. And what the magistrate said is — I mean, not McKinley, Harrington. And what the magistrate said was Harrington was biased because he was in the first council meeting where they talked about the bipolar disease. Our position, first of all, as a matter of law, he wasn't biased, and we should have prevailed. He corrected the other person. He stuck up for Bob Titus. He said, no, you can't talk about that. So how can him objecting to another council member then a month later on appeals board be held to be biased? And our final point is that a reasonable person would not know that it's clearly established that if you are in a city council meeting, someone inappropriate brings up a subject, you correct that person, then now you are biased for any further participation. So that summarizes our position. Roberts. Thank you. Good morning. Good morning. Please support. My name is Roxanne Farah, and I represent the plaintiff, Bob Titus. I think as Mr. Franz's arguments point out, he's essentially asking you today to sit here as the jurors to decide factual issues. There are a number, a host of factual issues that are raised in this appeal that I don't think are appropriate for decision at this juncture in the case, and I think that the trial court correctly decided that there were genuine issues of material fact remaining for trial, and that's what we would like to go and do. In terms of the charter argument, you are correct, Your Honor, that at-will employment is generally the rule in Oregon, but Oregon employers are permitted to change that through policies, through procedures and the like, which is precisely what the city of Prairie City did here. And what I find most interesting about the position that's advocated by Mr. Franz is that he's essentially asking you to void a personnel policy as being violative of the city charter when the city council itself hasn't seen fit to void that policy. Can the city act outside the charter? Can the city do more than what the charter permits it to do? I believe there's law that suggests they cannot, but I agree with the magistrate, as Mr. Franz keeps referring to her, but we consented to her, so she was acting as the district judge. I agree with the judge that this policy is not in violation of the city charter. My client's position is not specifically enumerated in that. And the two others are in violation of the city charter. Roberts, let me stop you right there. That's a legal question. There are no facts and disputes to that, right? I mean, she's either got it right or she's got it wrong. I agree with that. Okay. The Sisters case and the Gold Hill case involved a chief of police and a city recorder. Those two positions are specified in the city charter, as they are in many city charters. And so that distinguishes those cases from these cases. Likewise, the other cases on which the defendants rely all involved very precise at-will disclaimers that were included in the personnel policies themselves. This policy stands in stark contrast to those types of cases. There is a very specific procedure that's gone through. Our position is that, as you pointed out, Your Honor, one of the issues here is that Mr. Titus didn't receive notice of the charges. I mean, the defendants stepped through a series of procedures to, you know, that were indicative of a due process right and indicative of the right to have the process followed, but they never gave him notice of the charges that they discussed in the March 2008 executive session involving bipolar disease and, as Mr. McKinley said in his second deposition, the possibility of alcoholism arising from bipolar disease. And I'd point out that in his second deposition, I deposed all the city counselors initially. They all exhibited what I can only refer to as collective amnesia as to what occurred and what was discussed and what happened. Roberts. May I ask you, what made this business about the bipolar disorder, what made that confidential? I think I don't agree with Mr. Franz's statement of what the issue is. My issue with the discussion of it is that it indicates a bias in Mr. McKinley's thinking, and that bias infected the entire process, much like in Stivers v. Pierce. So it's not confidential? Well, no. I think your medical condition is confidential, but I think in terms of this case, the argument that was in front of the district judge was that that showed, and what she held, was that showed a bias. What does it show a bias? I'm sorry? How does it show a bias? I think when you notice to somebody that you're investigating them for outside employment or a violation of a sick leave policy, and in fact, behind closed doors in secret, you're discussing their medical condition, and as Mr. McKinley later testified, his, quote, inability to do his job, everything from supervisory to physical, to include his alleged lack of desire for his job, and inability  If you're going to have an open public process, then have an open public process. Don't hide things behind doors, and then don't hide them from the plaintiff repeatedly, and also hide them from the court. Keep in mind that in their motion to bar us from reopening discovery in this case, the defendants affirmatively represented to the court that they, the court had received all relevant materials essential to its decision in the case, and that the March 26th meeting had no bearing on the issue of bias in the plaintiff's claims. That simply is not true. And ultimately, the judge, I believe, correctly found that those, all of those aspects, and I go back to Stivers v. Pierce again, very much like the way the court tracked through the evidence in that case. The failure to follow the process, the failure to be open, the discussions behind closed doors about things that had nothing to do with the notice charges, all of those types of things led to a bias in the process. I don't have a lot to, other than that, to add, but I'm happy to answer any questions that the court has. Roberts. Roberts. Thank you. Thank you very much. Just a quick response that the initial meeting that the executive session took place, Mr. Titus was invited to it. He elected not to attend. It was behind closed doors because it was a personnel matter. Mr. Titus could have attended. I want to just hit one other point, because in the magistrate's opinion, she is insinuating that there was something evil done here because the executive session minutes were not produced initially. And what had happened is we were standing up, Ms. Vare and I were standing up in front of the judge arguing the motion for summary judgment, and the judge said, do we have a transcript of the appeals hearing and the executive session? And we said no. And so the following took place, first of all, is I stood up and I said, well, we've never even had a request for production of documents produced on us. She never, at plaintiff's attorney, never requested documents from us. So obviously, we didn't produce any documents. So then the judge says that you have the transcript of it, and it's kind of chopped up. The judge asked Ms. Vare, first of all, if there's a transcript. In my transcript, it says, Mr. Franz, here's what I say. Well, you didn't ask. Okay. You didn't ask me. Because the judge actually addressed her, I was interrupting. And then Ms. Vare said, no, I don't believe that I did ask. And then I said, okay. Because I said, you never asked me for those documents. So then the judge said, well, I think, I don't want to speak for you, Ms. Vare, but are you asking for it now? So what the judge basically did is took over the case and said, Ms. Vare, I don't want to run your case, but do you want transcripts of the proceedings? And she said, yes. And Ms. Vare said, yes, I would like the tape. I would be happy to have it transcribed and provided to the court. So this idea that we hid stuff, there was never a request for production of documents. And when it was requested of us, we provided it. She never requested it. And so you kind of read the judge's opinion, and it kind of looks like, Franz, you're hiding the ball, because the judge says in her opinion, this document wasn't produced to us until the court ordered Mr. Franz to produce it. She asked me at the motion for summary judgment hearing if I produced it, and I said, sure. It had never been requested before. So I just want to clear that out, that we're not going to produce documents unless somebody asks us for it. Thank you. Roberts. Thank you, Mr. McFarland. Ms. Vare, thank you.
judges: Silverman, Clifton, Smith